**FILED**

JUL 1 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHELLY SALZMAN, individually and on behalf of all others similarly situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | **CLASS ACTION COMPLAINT** |
| vs. | ) ) | **JURY TRIAL DEMANDED** |
| INPHONIC, INC., a Delaware Corporation, CONTINENTAL PROMOTION GROUP, INC., an Arizona Corporation, and JOHN DOES 1-100, | ) ) ) ) | |
| Defendants. | ) ) | |

CASE NUMBER  1:06CV01266

JUDGE: Ellen Segal Huvelle

DECK TYPE: General Civil

DATE STAMP: 07/17/2006

**JURY ACTION**

1

## TABLE OF CONTENTS

Page

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS . . . . . . . . . . . . . . . . . . . . 3

        A.      INPHONIC Entices Consumers With Deeply Discounted Prices Based on
                Mail-In Rebates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      INPHONIC's Rebate Conditions are Artificially Restrictive . . . . . . . . . . . . . . . 5

        C.      INPHONIC's Unreasonable Enforcement of its Rebate Conditions . . . . . . . . . . 6

        D.      INPHONIC's Hidden Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        E.      INPHONIC Failed to Provide Advertised Customer Service . . . . . . . . . . . . . . . 9

        F.      INPHONIC's Deceptive and Unlawful Trade Practices . . . . . . . . . . . . . . . . . . 10

        G.      INPHONIC Has Failed to Fullfill its Contractual Terms With Plaintiff . . . . . . . 11

        H.      Defendants Have Conspired to Engage in Conduct That Affects Interstate
                Commerce by Failing to Fulfill its Contractual Terms With Plaintiff . . . . . . . . . 13

V.      CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.      Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.      Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.      Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        D.      Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

COUNT I
    (Violation of the Federal Racketeer Influenced and
    Corrupt Organizations Act Against INPHONIC and CONTINENTAL) . . . . . . . . . . . . . 17

COUNT II
    (Violation of District of Columbia Consumer Protection Act Against INPHONIC) . . . 18

COUNT III
    (Unjust Enrichment Claim Against INPHONIC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

COUNT IV
    (Breach of Contract Against INPHONIC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

COUNT V
    (Negligent Misrepresentation Against INPHONIC) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.    PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VII.    DEMAND FOR JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Plaintiff SHELLY SALZMAN alleges, based upon personal knowledge as to the allegations specifically pertaining to her, and upon information and belief based on the investigation of her attorneys as to all other matters, as follows:

## I.   **INTRODUCTION**

1.      Plaintiff SHELLY SALZMAN (hereinafter "Plaintiff") and members of the Classes defined below, were injured by Defendant INPHONIC, INC. (hereinafter "INPHONIC"), individually, and in conspiracy with Defendant CONTINENTAL PROMOTION GROUP, INC. (hereinafter "CONTINENTAL"). Based on INPHONIC's deceptive advertisements claiming to provide consumers with deep price discounts and a "Customer Loyalty Rebate," Plaintiff purchased two Motorola RAZR V3 Camera Phones from INPHONIC through one of its affiliated websites. INPHONIC, however, had no intention of timely fulfilling its promised rebates to Plaintiff or any other consumers, regardless of whether they fully satisfied INPHONIC's unreasonable and artificially complicated rebate redemption protocol. Rather, INPHONIC, along with CONTINENTAL, have delayed redeeming Plaintiff's rebate as part of a pattern of continuous conspiratorial acts to delay, or reject, the rebate claims properly submitted by thousands of consumers across the country through the United States mail.

2.      Plaintiff brings this action under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO") and 18 U.S.C. §1341 for mail fraud; District of Columbia Consumer Protection Act, DC. Code Ann. § 28-3901, *et seq.*; breach of contract; negligent misrepresentation; and unjust enrichment. Plaintiff seeks a permanent injunction and other equitable relief, restitution for consumers, and civil penalties against Defendants for violation of these laws.

1

## II.    JURISDICTION AND VENUE

3.    Pursuant to the Class Action Fairness Act of 2006, this Court has subject matter jurisdiction to hear the pending claims because the amount in controversy exceeds $5,000,000, and there are members of the Class who are from different states than the Defendants.

4.    Subject matter jurisdiction is also appropriate because Plaintiff has brought Federal claims pursuant to 18 U.S.C. §§ 1961-1968 and 18 U.S.C. § 1341.

5.    This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims and would ordinarily be expected to be tried in one judicial proceeding.

6.    Venue is appropriate in this district because INPHONIC's principal place of business is in the District of Columbia and because this cases arises out of actions which occurred, at least in part, within this district.

## III.    PARTIES

7.    Plaintiff SHELLY SALZMAN, formerly known as Shelly Weiss, is a resident of Florida.

8.    Defendant INPHONIC is a Delaware corporation with its principal place of business at 1010 Wisconsin Avenue, NW, Suite 600, Washington, DC 20007.

9.    Defendant CONTINENTAL is an Arizona corporation with its principal place of business at 1120 W Warner Rd, Tempe, AZ, 85284.

10.    John Does 1 through 100 represent the individual employees, officers, agents, and distributors who assisted in the misconduct alleged herein. When their identities are ascertained, Plaintiff will amend the Complaint with the true names of the John Doe Defendants.

2

IV.    **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

11.    INPHONIC is an online seller of wireless services and wireless devices, including cellular phones and cellular calling plans. INPHONIC markets, advertises, sells, and distributes the wireless services and devices of companies such as T-Mobile, Cingular, Sprint, and Verizon to consumers through various websites that INPHONIC creates and manages under INPHONIC's own brand. In addition, INPHONIC itself purchases wireless devices from the aforementioned companies and packages the devices with wireless service plans for resale directly to consumers through INPHONIC's own branded websites, including, but not limited to www.wirefly.com (hereinafter "WIREFLY"). INPHONIC utilizes a proprietary electronic commerce platform that integrates the merchandising, advertising, marketing, sales, provisioning, procurement, billing operations, and customer care operations into a single system.

12.    Upon information and belief, INPHONIC is the largest third-party online retailer of wireless services and devices in the United States. Upon information and belief, INPHONIC sold 750,000 wireless devices and/or wireless service plans in 2004, capturing approximately 27% of the market in the United States. Upon information and belief, INPHONIC sold more than 840,000 wireless devices and/or wireless service plans in 2005, capturing approximately 33% of the market in the United States. Upon information and belief, INPHONIC's 2005 revenues totaled approximately $320 million.

A.    **INPHONIC Entices Consumers With Deeply Discounted Prices Based on Mail-In Rebates**

13.    WIREFLY is INPHONIC's flagship merchandising website. Upon information and belief, WIREFLY is one of the top five most-visited shopping websites in the United States.

3

WIREFLY markets, advertises, and sells wireless services and devices directly to consumers.
WIREFLY guarantees that it will offer consumers the lowest price on wireless services and
devices in the consumer's area.

14.    As part of an aggressive marketing campaign and sales program, WIREFLY
advertises many of the newest, most expensive, and/or most popular wireless devices as "free"
with the purchase and activation of a wireless service plan. WIREFLY is able to "sell"
consumers "free" phones based on its issuance of "Customer Appreciation Rebates" and/or
"Customer Loyalty Rebates." Often, these rebates constitute between one-third and one-half the
manufacturer's suggested cost of the wireless device. WIREFLY advertises what it purports to
be the "full" price of a wireless device, followed by a substantial discount purported as a
consumer's "Instant Savings."

15.    The terms and conditions of the rebates are disclosed on separate, less
conspicuous "back-pages" of the websites INPHONIC owns, operates, maintains, or otherwise
affiliates with, which consumers must "click through" to uncover. INPHONIC's "back-pages"
generally state that it will take 10 to 12 weeks to process rebate claims and that, in order to
qualify for a rebate, consumers must submit particular documentary evidence of their purchase of
a wireless device and their maintenance of a service plan. Consumers who use one of these
websites may proceed to purchase wireless phones and plans without clicking through to these
"back pages," and viewing the terms and conditions of the rebate offer. The websites also
preclude a consumer from viewing the full terms and conditions of INPHONIC's rebate, return,
and exchange policies before the completion of the purchase of one of its service plans or
wireless devices.

4

16.     The majority of the consumers who purchase wireless services and devices through INPHONIC, and/or through one of the websites it owns, operates, maintains, or otherwise affiliates with, never receive the advertised rebates. For example, only around 32% of those who activated phone service plans in March 2004 ultimately received a rebate.

17.     Consumers are required to mail the rebate form to CONTINENTAL for fulfillment. Upon information and belief, CONTINENTAL, in conspiracy with INPHONIC, consistently engaged in a scheme to deny a portion of properly submitted claims that meet onerous redemption conditions.

18.     The contact information provided on INPHONIC's websites for customer services in complying with INPHONIC's rebate polices is intentionally designed to obfuscate and frustrate consumers, and to make their compliance with INPHONIC's rebate redemption policy unduly burdensome and artificially complicated.

**B.     INPHONIC's Rebate Conditions are Artificially Restrictive**

19.     INPHONIC applies artificial and unusually restrictive conditions to its advertised rebates, making it difficult or impossible for consumers to obtain the rebates. INPHONIC fails to disclose these restrictive conditions on the same pages as its advertised post-rebate prices. For example:

(a)     In 2004, on the "back-pages" of some of its rebate offers, INPHONIC stated in unreasonably small print that, "you must include a bill dated at least 120 days after activation showing that the previous balance has been paid in full." However, in similar small print, these pages also stated that the consumers' submission must be postmarked within 120 days from the

5

activation date of the wireless service plan.

(b)    Between 2002 and 2006, on other rebate offers, INPHONIC stated, in small print on its "back-pages," that to qualify for rebates requiring consumers to maintain service for a period of 150 to 180 days, consumers must submit their rebate claims "no earlier that 180 days and no later than 210 days after your account is activated."

(c)    Additionally, between 2002 and 2005, on some of its rebate offers, INPHONIC stated, in unreasonably small print on its "back-pages," that consumers would not be eligible for rebates if they switched to another rate plan, changed their phone number, "ported" their existing phone number after activating their new phones, or returned their phones.

## C.    INPHONIC's Unreasonable Enforcement of its Rebate Conditions

20.    INPHONIC's unreasonable enforcement of its unusually restrictive rebate conditions makes it difficult, often impossible, for many consumers to obtain the advertised rebates. Between 2002 and 2006, INPHONIC engaged in the following practices:

(a)    Some consumers sent in the required documentation by certified mail, but INPHONIC sent these consumers notices stating that it had not received the documentation, and denied the consumers' rebate claims;

(b)    Other consumers submitted their documentation in a timely manner, but INPHONIC sent these consumers requests for additional information after the deadline for submission of consumers' rebate claims had passed. INPHONIC subsequently denied these claims as untimely;

6

(c) INPHONIC has failed to provide consumers with rebate forms in a timely manner or provided consumers with the wrong address for submission of the rebate requests, and later denied these consumers' rebate claims as untimely;

(d) Some consumers, who have rebate offers stating that they must maintain their accounts in good standing for 180 days, have waited for their post-180 day billing statement to show this fact. INPHONIC has denied these consumers' rebate claims as untimely, notwithstanding the fact that INPHONIC knew or should have know that he time constraints on their rebate offers were causing consumer confusion.

21. INPHONIC's practice is to cite alleged errors in rebate submissions, even those that INPHONIC caused itself, as justification to deny rebate requests of otherwise eligible consumers. Many consumers who attempt to dispute INPHONIC's denials of their claim get no response to their calls or emails to INPHONIC, receive only "automated" or "form" responses, receive inconsistent or contradictory explanations as to why INPHONIC denied their claims, or are given misleading or untimely incorrect information about INPHONIC's willingness to waive or correct an alleged error.

**D.    INPHONIC's Hidden Charges**

22. In many of its advertisements, on the "front-pages"featuring its advertised prices, INPHONIC fails to disclose that consumers will be assessed additional charges if they fail to satisfy certain post-purchase conditions. Many of INPHONIC' advertised prices include "discounts"that INPHONIC does not include in its "front-page" calculation of costs. INPHONIC

7

then charges consumers for these hidden discounts if they fail to meet certain conditions.

(a)     None of the "front-pages" of INPHONIC's advertisements mentioned a
"purchase discount" that is included in the total price of the wireless
device and service plan. Between 2002 and 2006, in small print on the
"back-pages" of many of its advertisements, INPHONIC stated that it had
provided a purchase discount of $250, in exchange for the consumer
maintaining its wireless account for 180 days. INPHONIC further stated
that it would automatically charge consumers' credit cards for this $250,
without further notice, if consumers switched their plans to a lower
monthly service rate, or if the consumers failed to maintain service in good
standing for 181 days. Some consumers were unaware of this potential
cost until the charge appeared on their credit card statements.

(b)     None of the "front-pages" of INPHONIC's advertisements mention
"equipment discount charge backs" as part of the calculation of the cost of
the phone and plan. Between 2002 and 2006, in unreasonably small print
on the "back-pages" of many of its advertisements, INPHONIC states that,
"to qualify and redeem the rebate, and to avoid an equipment discount
charge back of $250, your rebate submission must be postmarked no
earlier than 180 days and no later than 210 days after your account is
activated." Many consumers are unaware that the advertised cost includes
this "equipment discount." Some consumers who return phones to
INPHONIC that they did not order are charged for this "equipment

8

discount."

23.     INPHONIC's advertised prices and inconspicuous disclosures of additional

charges mislead consumers as to the actual prices they will pay for wireless service plans and

wireless devices.

**E.     INPHONIC Failed to Provide Advertised Customer Service**

24.     Although INPHONIC advertises the availability of customer service through

several links on its website, including those labeled "Check Your Order Status," "Contact Us,"

and "Help," as well as through customer service phone numbers listed on its websites and in its

printed materials, many consumers are unable to obtain help or customer service from

INPHONIC. For example:

> (a)     Many consumers send inquiries to INPHONIC through its website, or by
>
> phone, and receive no response from INPHONIC in spite of multiple
>
> attempts to obtain assistance;
>
> (b)     Many consumers who send inquiries to INPHONIC through its website, or
>
> over email, receive automated or form replies from INPHONIC that are
>
> not responsive to their inquiries;
>
> (c)     Some consumers are given conflicting information from INPHONIC when
>
> speaking to different representatives of the company, or when comparing
>
> information obtained over the phone, with information available on
>
> INPHONIC's website, and are unable to get INPHONIC to reconcile the
>
> conflicting information;
>
> (d)     Some consumers who call INPHONIC are placed on hold for lengthy

9

periods, and are unable to reach a representative of Defendant;

(e)    Some consumers attempt to contact INPHONIC to get an explanation for their rebate rejection (e.g., how the rebate submission is illegible or incomplete), but are given no explanation and no opportunity to correct the alleged error;

(f)    Some consumers who are promised return calls, equipment or forms from INPHONIC, find that INPHONIC does not provide the requested information, equipment or forms;

(g)    Some consumers who provide corrections or additions to their orders with INPHONIC find that INPHONIC fails to process the new information;

(h)    Many consumers who are unable to resolve their problems with a customer service or rebate representative of INPHONIC are unable to obtain contact information for a supervisor or other management employee of INPHONIC.

25.    INPHONIC's failure to provide customer service prevents many consumers from being able to obtain their rebates, to dispute incorrect charges, to return defective equipment or to obtain promised "free"equipment.

**F.    INPHONIC's Deceptive and Unlawful Trade Practices**

26.    INPHONIC prominently advertises post-rebate prices and cost savings without clearly disclosing that consumers must comply with unusually restrictive and unreasonably enforced conditions to secure the advertised rebates and cost savings. As a result, many consumers are misled into paying more than the advertised post-rebate prices.

27.    INPHONIC states on the "back-page" of its advertisements that it will take 10 to 12 weeks to process rebate claims. Many consumers find that INPHONIC fails to process their rebate claims within this period, which is at least 9 months after their purchase of their phones and plans.

28.    INPHONIC prominently advertised discounted prices without clearly disclosing that the advertised prices included a revocable deduction for "purchase discounts" or that INPHONIC would automatically charge consumers' credit cards for the "purchase discounts" if within the first 180 days of their service plan, consumers switched to a plan with a lower monthly service rate, failed to promptly pay their service plan bills, or terminated their service plan (without upgrading to a higher-priced plan).

29.    INPHONIC prominently advertises discounted prices without clearly disclosing that the advertised prices include a revocable deduction for "equipment discount charge backs" that INPHONIC may assess against consumer who return their phones, even if the phones are defective.

30.    INPHONIC falsely advertises that it provides customer service to consumers who do business with it, when in fact many consumers who use the contact methods offered by INPHONIC find that they are unable to either reach an INPHONIC representative or obtain assistance from INPHONIC and are consequently unable to obtain promised rebates, dispute incorrect charges, return defective equipment or obtain promised "free" equipment.

**G.    INPHONIC Has Failed to Fullfill its Contractual Terms With Plaintiff**

31.    On or about June 19, 2005, Plaintiff ordered two Motorola Razr V3 Camera Phones from INPHONIC's website for $169.99 per phone. (See Invoice sheet attached as

11

Exhibit A.)

32.     As part of her purchase agreement and contract, INPHONIC agreed to provide, and Plaintiff relied upon, a $170.00 "FREE RAZR V3 Rebate Offer" for each phone.

33.     Plaintiff submitted a rebate claim form, in compliance with each and every requirement, to: Consumer Loyalty Rebate, Department-BAR, PO Box 100363, White Bear Lake, MN 55110.  In December of 2005, INPHONIC informed Plaintiff that it had lost her claim in its system.  INPHONIC then instructed Plaintiff to resubmit her claim, this time to CONTINENTAL at: Customer Loyalty Rebate, PO Box 52900, Phoenix, AZ 85072.

34.     On January 6, 2006, Plaintiff resubmitted her rebate claim form as instructed by INPHONIC.  Thereafter, Plaintiffs was asked to resubmit her rebate claim form three additional times.  Each time, Plaintiff complied with the instructions and resubmitted her rebate claim form.

35.     On January 20, 2006, Plaintiff received an email from INPHONIC's "Consumer Contact Center" that read in part:

> Our records indicate a valid rebate is currently being processed.  A check will be issued and mailed to you upon completion of processing . . . Your rebate was entered successfully on 01/18/2006.  Please allow 10-12 weeks for processing from this date.

36.     On February 5, 2006, INPHONIC sent an email to Plaintiff denying her rebate request on the erroneous grounds that "The bill(s) sent does not show an invoice/bill date."  In the email, INPHONIC directed Plaintiff to send in "any missing/corrected information . . . [within] 30 days from this letter date."  Plaintiff complied with this time frame and resubmitted yet another time rebate claim form.

37.     On May 23, 2006, INPHONIC informed Plaintiff that her claim was "invalid."

12

The proferred reason was that Plaintiff's "submission was not postmarked within the valid time frame."

38.     As of the date of this Complaint, INPHONIC has not awarded Plaintiff the promised rebates.

**H.     Defendants Have Conspired to Engage in Conduct That Affects Interstate Commerce by Failing to Fulfill its Contractual Terms With Plaintiff**

39.     INPHONIC and CONTINENTAL are enterprises capable of holding legal and beneficial interests in property.

40.     Upon information and belief, under their rebate administration agreement, CONTINENTAL's compensation from INPHONIC is tied to the number of rebate claims redeemed and denied. Upon information and belief, the fewer rebates CONTINENTAL fulfills or redeems, the more CONTINENTAL is compensated from INPHONIC. Upon information and belief, INPHONIC and CONTINENTAL engaged in a pattern of intentionally and knowingly rejecting or delaying properly submitted rebate claims submitted through the United States mail from 2002 through 2006 from various states across the county.

41.     Upon information and belief, INPHONIC and CONTINENTAL engaged in this knowing pattern of behavior to increase revenues.

42.     Upon information and belief, INPHONIC and CONTINENTAL have delayed fulfilling Plaintiff's properly submitted rebate claim in furtherance of this conspiracy.

**V.     CLASS ACTION ALLEGATIONS**

43.     Plaintiff brings each of the claims in this action in her own name and on behalf of Classes of all persons similarly situated ("the Classes") pursuant to Federal Rules of Civil

13

Procedure 23.

44.    This action is brought on behalf of two Classes, which are defined as follows:

**Class "A"** - All persons or entities in the United States who purchased a wireless device, cellular calling plan or wireless service from INPHONIC through any of its affiliated websites and submitted a rebate claim form that complied with the rebate requirements but was rejected.

**Class "B"** - All persons or entities in the United States who purchased a wireless device, cellular calling plan or wireless service from INPHONIC through any of its affiliated websites and submitted a rebate claim form that complied with the rebate requirements whose claim is or was outstanding for more than twelve weeks.

The Classes exclude Defendants, any entity in which any Defendant had a controlling interest, the officers, directors, and employees of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

45.    This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rule of Civil Procedure 23.

**A.    Numerosity**

46.    Members of the Classes are so numerous that individual joinder is impracticable. The precise number of members of the Classes and their addresses are unknown to the Plaintiff. Plaintiff estimates that the Classes consist of tens of thousands of members. The precise number of persons in the Classes and their identities and addresses may be ascertained from Defendants' records. Members of the Classes may be notified of the pendency of this action by mail and supplemented, if deemed necessary or appropriate by the Court, by published notice.

**B.    Commonality**

47.    Common questions of fact and law exist as to all members of the Classes. These

14

questions predominate over the questions affecting only individual members of the Classes.
These common legal and factual questions include:

    (a)    Whether INPHONIC concealed the terms of its rebate programs;

    (b)    Whether INPHONIC's advertisements and rebate programs were likely to
        deceive;

    (c)    Whether the terms of INPHONIC's rebate programs are unconscionable;

    (d)    Whether INPHONIC failed to provide the advertised customer care;

    (e)    Whether Defendants knowingly conspired to deny properly submitted
        claims submitted through the United States mail in violation of RICO; and

    (f)    Whether INPHONIC violated the District of Columbia Consumer
        Protection Act.

**C.**    **Typicality**

48.    Plaintiff's claims are typical of the claims of the members of the Classes because
Plaintiff purchased a cellular phone from INPHONIC through one of its websites based on the
deceptive advertising, she properly submitted a rebate claim, and she was denied the rebate she
was promised.

**D.**    **Adequacy**

49.    Plaintiff is an adequate representative of the Classes because Plaintiff's interests
do not conflict with the interests of the members of the Classes. Plaintiff has retained counsel
competent and experienced in complex class action litigation, and Plaintiff intends to prosecute
this action vigorously. The interests of the members of the Classes will be fairly and adequately
protected by Plaintiff and her counsel.

50.     This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and the Classes, thereby making declaratory and/or injunctive relief proper.

51.     This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member may be relatively small, especially given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Furthermore, it would be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Moreover, even if Class members themselves could afford such individual litigation, the court system could not. Individual litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal issue of the case. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

52.     In addition, this suit may be maintained as a Class action under Federal Rule of Civil Procedure 23(b)(3), based on the following reasons:

      (a)     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible  standards of conduct for Defendants; or

16

(b)    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## COUNT I

### (Violation of the Federal Racketeer Influenced and

### Corrupt Organizations Act Against INPHONIC and CONTINENTAL)

53.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

54.    INPHONIC is an enterprise engaged in, and whose activities affect, interstate commerce. CONTINENTAL is employed by, and associated with, INPHONIC.

55.    The Defendants agreed to, conducted, and participated in the conduct of rejecting or delaying properly submitted rebate claims sent through the United States mail in conjunction with wireless devices, cellular phone plans and wireless services on INPHONIC's websites through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the members of Classes.

56.    Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts, as described above, that constitute a pattern of racketeering activity

17

pursuant to 18 U.S.C. § 1961(5).

57.    The Defendants have directly and indirectly conducted and participated in the

conduct of denying or delaying properly submitted rebate claims in violation of 18 U.S.C. §

1962(c).

58.    As a direct and proximate result of the Defendants' racketeering activities and

violations of 18 U.S.C. § 1962(c), Plaintiff and the members of the Classes have been injured in

their business and property in that they have not received their rebate or have had to wait beyond

the contracted time period for their rebate, both of which have caused serious financial harm.

59.    WHEREFORE, Plaintiff and members of the Classes request this Court to enter

judgment against the Defendants for actual damages, treble damages, and attorneys' fees.

## COUNT II

### (Violation of District of Columbia Consumer Protection Act Against INPHONIC)

60.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though

fully set forth herein.

61.    The general public, including members of the Classes, reasonably and routinely

rely upon websites and marketing in making purchasing decisions.  In designing, promoting and

maintaining its websites and marketing materials, INPHONIC was aware that if it disclosed all of

the terms and conditions of the its rebate policies, Plaintiff and members of Class C would not

have purchased products from INPHONIC.

62.    The District of Columbia Consumer Protection Act (District of Columbia Code

Ann. § 28-3901), was in full force and effect at all times relevant to this litigation.  The purpose

of the Act is to assure that a just mechanism exists to remedy improper trade practices and deter

18

the continuing use of such practices, to promote fair business practices throughout the

community, and to seek proper redress of grievances. D.C. Code Ann. § 28-3901(b). The Act

states in relevant part:

> It shall be a violation of this chapter, whether or not any consumer is in fact
> misled, deceived or damaged thereby, for any person to . . . misrepresent a
> material fact which has a tendency to mislead . . . fail to state a material fact if
> such failure tends to mislead . . . advertise or offer goods or services without the
> intent to sell them or without the intent to sell them as advertised or offered . . .
> make false or misleading representations of fact concerning the reasons for,
> existence of, or price reductions, or the price in comparison to price of
> competitor's or one's own price at a past or future time . . . [and] make or enforce
> unreasonable terms or provisions of sales or leases.

D.C. Code Ann. § 28-3904.

63.     Pursuant to the Act, a person, whether acting for the interest of itself, its members,

or the general public, may bring an action for relief from unlawful trade practices and may seek

the following remedies:

> (A)     treble damages or $1,500 per violation, whichever is greater, payable to
>         the consumer;
> (B)     reasonable attorneys fees;
> (C)     punitive damages;
> (D)     an injunction against the use of the unlawful trade practices;
> (E)     in representative actions, additional relief as may be necessary to restore to
>         the consumer money or property, real or personal, which may have been
>         acquired by means of the unlawful trade practices; or
> (F)     any other relief which the court deems proper.

D.C. Code Ann. § 28-3905(k)(1).

64.     INPHONIC has committed, and will continue to commit, one or more of the

following unlawful trade practices:

> (a)     Misrepresented the true nature of its rebate programs, deceived consumers
>
>         into thinking they are purchasing cellular phones and cellular calling plans

19

at a greatly reduced price, concealed the restrictive requirements for the

rebate program, concealed the penalties for failing to comply with all

terms and conditions of the purchase, and misled consumers about the

nature, extent, utility, and availability of INPHONIC's customer service;

(b)    INPHONIC set up its websites to intentionally confuse, deceive, and

mislead consumers into purchasing cellular phones, cellular calling plans

and wireless services during the course of trade and commerce.

65.    INPHONIC's policies and practices are unlawful, unethical, oppressive,

fraudulent, and malicious. The gravity of the harm to all consumers from INPHONIC's policies

and practices far outweighs any purported utility of those policies and practices.

66.    Plaintiff and members of the Classes have suffered and continue to suffer

damages as a result of INPHONIC's unlawful trade practices and are "consumers" within the

meaning of, and are entitled to bring this claim under the Act.

67.    WHEREFORE, Plaintiff and the members of Classes request this Court to enter

an order enjoining INPHONIC from conducting the aforementioned activities and a judgment for

actual damages, statutory damages, punitive damages, injunctive relief, disgorgement of profits,

and attorneys' fees.

## COUNT III

### (Unjust Enrichment Claim Against INPHONIC)

68.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though

fully set forth herein.

69.    As a result of INPHONIC's actions as alleged herein, INPHONIC unjustly

20

enriched itself to the detriment of Plaintiff and the members of Classes.

70.    By denying or delaying rebate claims, INPHONIC was able to report higher
revenue than what properly belonged to INPHONIC.

71.    If consumers had known of INPHONIC's deceptive practices and the true nature
of the rebate policies, they would have lessened or stopped their business dealings with
INPHONIC.

72.    INPHONIC's retention of these benefits violates fundamental principles of
justice, equity and good conscience and came at the expense and harm of the Plaintiff and
members of the Classes.

73.    WHEREFORE, Plaintiff and the members of Classes request this Court to enter
judgment against INPHONIC for actual damages, treble damages, and attorneys' fees.

**COUNT IV**

**(Breach of Contract Against INPHONIC)**

74.    Plaintiff incorporates by reference all allegations of all prior paragraphs as though
fully set forth herein.

75.    During the Class Period, Plaintiff and each member of the Classes entered into a
contract with INPHONIC that included a rebate offer..

76.    INPHONIC has uniformly breached its contracts with Plaintiff and members of
the Classes by failing to disclose all material limitations on its rebate offers, developing and
implementing business practices that were designed to, and did, deprive customers of their
rebates, and failing to act in good faith in its business practices with customers.

77.    As a direct and proximate result of INPHONIC's wrongful conduct and breach of

21

contract, Plaintiff and the members of the Classes were damaged in an amount to be determined at trial.

78.     WHEREFORE, Plaintiff and the members of Classes request this Court to enter judgment against the Defendants for actual damages and attorneys' fees.

## COUNT V

### (Negligent Misrepresentation Against INPHONIC)

79.     Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

80.     During the Class Period, INPHONIC negligently and/or recklessly committed the one or more of the following acts:

(a)     Knowingly and purposely misrepresented the true nature of the rebate program with the intent to induce and deceive consumers into making cellular phone and cellular calling plan purchases;

(b)     Knowingly and purposely misrepresented and concealed the true price of cellular phones and cellular calling plans with the intent to induce and deceive consumers into making cellular phone and cellular calling plan purchases;

(c)     Knowingly and purposely misrepresented, concealed, and/or obfuscated material requirements, terms, and conditions for the rebate program with the intent to induce and deceive consumers into making cellular phone and cellular calling plan purchases;

(d)     Knowingly and purposely misrepresented and concealed the penalties for

22

failing to comply with all terms and conditions of the purchase of cellular phone and/or cellular phone plans with the intent to induce and deceive consumers into making cellular phone and cellular calling plan purchases;

(e)    Knowingly and purposely misled consumers about the nature, extent, utility, and availability of INPHONIC's customer service with the intent to induce and deceive consumers into making cellular phone and cellular calling plan purchases;

81.    At all times relevant to this litigation, INPHONIC had actual and constructive knowledge that the general public, including members of the Classes, reasonably and routinely relied upon the information and representations provided on its websites and in its marketing materials in making purchasing decisions. Upon information and belief, in designing, promoting and maintaining its websites and marketing materials, INPHONIC was aware that if it disclosed all of the terms and conditions of the its rebate policies to consumers, Plaintiff and members of the Classes would not have purchased the products from INPHONIC.

82.    As a direct and proximate result of INPHONIC's negligent misrepresentations, Plaintiff and members of the Classes were damaged in an amount to be determined at trial.

83.    INPHONIC's acts and misconduct, as alleged herein, constitute oppression, fraud, or malice, thereby entitling Plaintiff and member of the Classes to recover an award of punitive or exemplary damages to the extent allowed in an amount appropriate to punish or to set an example of INPHONIC.

84.    WHEREFORE, Plaintiff and the members of the Classes request this Court to enter judgment against the Defendants for actual damages, treble damages, and attorneys' fees.

23

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class members pray that this Court grant the following relief:

1.    An order certifying the Plaintiff Classes as set forth herein, with Plaintiff as the Class Representative for Classes A and B, and Plaintiff's Counsel as Class Counsel for Classes A and B.

2.    For compensatory damages in an amount to be proven at trial.

3.    For restitution and disgorgement of profits.

4.    For any statutory, treble and/or punitive damages to the extent permitted by law.

5.    For declaratory relief, including but not limited to, declaring the rebate program and associated advertisements on INPHONIC's website to be unconscionable, misleading and void.

6.    For equitable relief, including but not limited to, requiring INPHONIC to fullfill all rebate claims of the members of the Classes and to discontinue the use of rebate programs.

7.    For an award to Plaintiff of her attorneys' fees and other costs of suit.

8.    For such other and further relief as the Court deems just and equitable.

Dated:  July 12, 2006          By:  _____

                                    MARK P. FRIEDLANDER, JR. (#45526)
                                    **FRIEDLANDER, FRIEDLANDER &**
                                    **EARMAN, P.C.**
                                    1364 Beverly Road, Suite 201
                                    McLean, VA 22101
                                    Telephone: 703-893-9600

BRUCE L. SIMON
**COTCHETT, PITRE, SIMON & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
Email: bsimon@cpsmlaw.com

HARVEY ROSENFIELD
PAMELA PRESSLEY
**FOUNDATION FOR TAXPAYER AND
CONSUMER RIGHTS**
1750 Ocean Park Boulevard, Suite 200
Santa Monica, CA 90405
Telephone: 310-392-0522
Facsimile: 310-392-8874

*Attorneys for Plaintiff Shelly Salzman and the
Classes*

## VII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by a jury.


Dated:   July 12, 2006

By:   _____

MARK P. FRIEDLANDER, JR. (#45526)
**FRIEDLANDER, FRIEDLANDER &**
**EARMAN, P.C.**
1364 Beverly Road, Suite 201
McLean, VA 22101
Telephone: 703-893-9600

BRUCE L. SIMON
**COTCHETT, PITRE, SIMON & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
Email: bsimon@cpsmlaw.com

HARVEY ROSENFIELD
PAMELA PRESSLEY
**FOUNDATION FOR TAXPAYER AND**
**CONSUMER RIGHTS**
1750 Ocean Park Boulevard, Suite 200
Santa Monica, CA 90405
Telephone: (310) 392-0522
Facsimile: (310) 392-8874

*Attorneys for Plaintiff Shelly Salzman and the*
*Classes*